IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JODY L. ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-1849-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Alan R. Unkeles
1865 NW 169th Place, No. 121
Beaverton, Oregon 97006

    Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902

Page 1 - OPINION AND ORDER

David J. Burdett
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Jody Anderson brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## BACKGROUND

Plaintiff filed applications for SSI and DIB in March 2003.  The applications were denied initially and upon reconsideration.  After a timely request for a hearing, plaintiff, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on August 10, 2005.

On January 8, 2006, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits.  The Appeals Council remanded for further hearing after receiving new evidence.  On September 14, 2006, plaintiff appeared and testified before the ALJ again.  On October 12, 2006, the ALJ issued a second decision finding plaintiff not disabled.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on October 30, 2007.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that plaintiff has the severe impairments of cognitive disorder, borderline intellectual functioning and ongoing methamphetamine and alcohol abuse. However, the ALJ did not find that these impairments met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

The ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform light exertion work. She can lift and carry up to 20 pounds occasionally and 10 pounds frequently. She can sit, stand, or walk for six hours in an eight-hour workday. She can occasionally climb, balance or crouch. She should avoid hazards and may engage in only short conversations with the public. She can perform simple one-to-three step tasks, but she cannot engage in constant fine manipulation.

Given this RFC, the ALJ concluded plaintiff could not return to her past relevant work, but she could work as a garment sorter or housekeeper.

## FACTS

Plaintiff, born in June 1961, was 45 at the time of the second hearing. She alleges disability beginning January 9, 2003, due to a stroke. She complains of difficulty walking, memory and concentration problems, and right-sided weakness. Plaintiff has an eighth-grade

education. She has worked as a waitress, a bartender, a circuit board tester, in customer service, as a caretaker, and at a number of temporary jobs.

Plaintiff suffered an acute left-sided middle cerebral artery stroke on January 9, 2003. A urine drug screen was positive for amphetamine and methamphetamine. Don Palencia, D.O., evaluated plaintiff on May 2, 2003 and noted residual deficits in word finding and articulation and deficits with fine movements of the right hand making it a little difficult for plaintiff to write. In July of 2003, Dr. Palencia noted that plaintiff's speech was slow with a slight slurring of some words, but overall she was articulate and easily understandable.

Plaintiff was admitted to the emergency room on August 6, 2003 for acute onset of right-sided weakness and severe dysarthria,[1] which were manifestations of a second cerebral vascular accident. Wan-jui Chen, M.D., examined her and found progressive weakness of the right upper and lower extremities and significant dysarthria, but plaintiff was able to understand and communicate.

In November 2003, plaintiff reported that things were going fine. Dr. Palencia reminded her about the importance of sticking to her prescription regimen.

The ALJ ordered a consultative exam after the first hearing. John H. Ellison, M.D., evaluated plaintiff on September 17, 2005. Plaintiff reported to Dr. Ellison that she cannot walk far or fast because of rapid heart rate and dyspnea[2] since the first stroke, and she complained of mental slowness and inability to come up with words. She also complained of right-sided

---

[1] "[S]peech disorder because of weakness or incoordination of the speech muscles." Tr. 24.

[2] "[D]ifficult or labored respiration." Merriam Webster's Medical Desk Dictionary 225 (1996).

Page 6 - OPINION AND ORDER

weakness since the second stroke. Dr. Ellison noted that plaintiff "tried to cooperate but often [had] a long delay in answering questions" and that she had "some difficulty" with "memory tracking and conversational understanding." Tr. 429. He also mentioned her statements about her history were of questionable reliability. Her station/gait was normal, including Romberg, walking tandem and on heels and toes, and she was able to reach, grip, release and manipulate large and small objects with either hand. He found some decrease in the strength of her right arm and leg (4/5) and some decreased pinprick, touch, temperature and vibratory sense on her right side. He concluded plaintiff was limited to ten to fifteen minutes of standing for a total of 90 minutes in an eight-hour day; she was limited to walking one to one and a half blocks by exertional dyspnea; was not limited in sitting; was limited to carrying and lifting ten pounds occasionally, with either hand; and that she tends to drop things from the right hand.

Kathleen Ugolini, Ph.D., administered a neuropsychological screening evaluation on September 9 and 13, 2005. Plaintiff admitted to Dr. Ugolini that she had used methamphetamines two to three times since her second stroke in August 2003. The last time was in the Spring of 2005. Dr. Ugolini noted that plaintiff "did appear to be a sincere woman who was making her best attempt to present herself accurately and no conscious attempt to exaggerate or embellish symptoms was noted." Tr. 412. Testing showed that plaintiff's intellectual functioning was in the Borderline range. Dr. Ugolini identified moderate limitations in plaintiff's ability to understand, remember and carry out detailed instructions.

On October 29, 2005, plaintiff suffered a third stroke the "most likely etiology" of which was methamphetamine abuse. Tr. 436. Jennifer Bishop, M.D., noted that plaintiff "has not

indicated any desire to stop using drugs." Id. Plaintiff tested positive for methamphetamines. She was discharged November 3.

On November 17, 2005, Daniel Friedman, M.D., saw plaintiff at a follow-up visit. She denied chest pain or shortness of breath. She displayed normal power, tone and bulk in all extremities and her station and gait were normal. Her concentration and memory were normal. She could relate her medical history without evidence of aphasia or dysarthria.³ Dr. Friedman examined plaintiff in December 2005 and again in March 2006 and found no changes in her condition.

At the supplemental hearing before the ALJ on September 14, 2006, plaintiff testified that she used methamphetamines when friends come over and that she had smoked it about a month before.

## DISCUSSION

I.   Medical Evidence

At the conclusion of the consultative exam, Dr. Ellison found plaintiff limited to modified sedentary work. The ALJ gave Dr. Ellison's report some weight to the extent Dr. Ellison concluded plaintiff could work. The ALJ did not, however, accept Dr. Ellison's conclusion that plaintiff could perform only modified sedentary work. The ALJ rejected Dr. Ellison's opinion about plaintiff's physical limitations because Dr. Ellison based his opinion on plaintiff's subjective reports, failed to support his conclusion with objective findings, and saw plaintiff only once.

---

³Aphasia is "an impairment in the ability to use or comprehend words." Tr. 24 n.1.

Page 8 - OPINION AND ORDER

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 602 (9th Cir. 1999) (internal quotation omitted); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings." Batson v. Barnhart, 359 F.3d 1190, 1195 (9th Cir. 2003).

I agree with plaintiff that the fact that Dr. Ellison evaluated plaintiff on only one occasion is not a sufficient reason for the ALJ to not fully credit Dr. Ellison's functional analysis.

Nevertheless, Dr. Ellison relied solely on plaintiff's description of her complaints in coming to a conclusion about plaintiff's physical limitations, despite the fact that he noted plaintiff was of "questionable reliability" as a historian. Tr. 26, 428. Furthermore, pursuant to Social Security Ruling 96-4p n.2, plaintiff's "symptoms" become "signs" of an impairment when they can be shown by "medically acceptable clinical diagnostic techniques." The problem is that Dr. Ellison's conclusions about plaintiff's functional limitations were not supported by "medically acceptable clinical diagnostic techniques."

For example, Dr. Ellison's report does not support a finding that plaintiff is limited to standing ten to fifteen minutes for a total of 90 minutes in an eight-hour day or that she is limited to walking one to one and a half blocks. The negative Romberg showed she can balance and Dr. Ellison noted plaintiff had a normal gait and station, not slow gait due to breathing problems, strength or stamina. She had no cough or wheezing. Furthermore, Dr. Ellison opined that plaintiff is limited to carrying and lifting ten pounds occasionally, with either hand, and that she tends to drop things from the right hand. Testing, however, reflected that plaintiff had no difficulty grasping with both hands. She had no pain in her hands. Although she had some decrease in the strength of her right hand, it was minimal (4/5), and her decreased senses on the right hand were minimal as well.

Instead, Dr. Ellison relied on plaintiff's description of her symptoms in coming to his conclusion and this is insufficient when the ALJ properly discounted plaintiff's description of her symptoms. Plaintiff did not challenge the ALJ's analysis of plaintiff's credibility in her Opening

Page 10 - OPINION AND ORDER

Brief although she suggests in her Reply Brief that the ALJ's analysis was too general. I disagree. The ALJ noted that plaintiff did not stop using methamphetamine, which was the most likely cause of her strokes, even though she testified initially that she no longer used drugs; her description of her activities indicates she has adequate use of her right hand; she failed to comply with her medication regimen or quit smoking; and she reported to Dr. Palencia in 2003 that she was doing well. The ALJ gave clear and convincing reasons for finding plaintiff's testimony not fully credible. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); Smolen, 80 F.3d at 1284 (unexplained failure to follow prescribed course of treatment is factor to consider in credibility analysis); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (unexplained failure to follow doctor advice is credibility factor).

The ALJ's decision not to fully credit Dr. Ellison's work limitations is supported by clear and convincing reasons.

II.    Lay Testimony

The ALJ considered Yvonne Hubbert's and William Butler's observations about plaintiff and concluded they were "generally credible to the extent these individuals are simply reporting their observations of the behaviors the claimant demonstrates." Tr. 39. He concluded that the lay witnesses did not have the ability to give an opinion about how plaintiff's impairments affect plaintiff's ability to work. The ALJ also noted that neither lay witness mentioned plaintiff's drug abuse. Finally, the ALJ concluded that the limitations identified by the lay witnesses were not supported by the objective medical records and testing.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A

Page 11 - OPINION AND ORDER

medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Butler testified at the hearing that he is plaintiff's boyfriend, that he sees plaintiff twice a day before and after work, that he helps her lift heavy things, mows the lawn, and weeds the flowerbeds. He carries the laundry for her. He described her reading comprehension problems, but conceded she has no trouble understanding television programs. He also testified at length that she could not work as a waitress or in an office support-type position.

Hubbert completed a Third Party Information on Activities of Daily Living and Socialization. She reported that plaintiff gets along well with family members and sees them every day, she leaves the house weekly to go to the grocery store, shop, and visit friends and relatives. She goes to movies and dinner. Hubbert reported that plaintiff tires easily, is unable to talk as well as she used to, is unable to do beadwork because of her hand, and has reading comprehension problems. Store clerks, doctors and nurses find it difficult to understand plaintiff. She goes for a walk once a week for two blocks at a time. Hubbert identified cleaning as the other type of exercise plaintiff gets; plaintiff does laundry every one to two weeks, dusts once a week, and vacuums once a week. Hubbert reported plaintiff does these chores on her own and does a "fine" job. Plaintiff sleeps well at night and eats well.

The ALJ properly rejected Butler's testimony that plaintiff could not work in her past positions because Butler does not have vocational expertise. Moreover, the ALJ properly rejected both Butler's and Hubbert's testimony as being inconsistent with the objective medical records and objective testing. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (ALJ may

reject a lay witness' testimony if it conflicts with medical evidence); <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001) (ALJ may place more weight on medical evidence than on lay witness testimony). Dr. Ellison found plaintiff could grasp with both hands and she only had minimal decreased strength in her right hand. Dr. Ugolini indicated only moderate limitations understanding, remembering and carrying out instructions. Dr. Palencia noted that mainly plaintiff's speech was affected by the first stroke, but he could understand her. Dr. Friedman evaluated plaintiff after her third stroke and found her concentration and memory were normal, her station and gait were normal, she had normal power, tone and bulk in all her extremities, and she could relate her medical history without evidence of aphasia or dysarthria. The ALJ found that the lay witness statements conflicted with this medical evidence.

The fact that neither witness mentioned plaintiff's drug use is not persuasive since neither witness was asked about it.

In sum, the ALJ gave reasons germane to each witness for not fully crediting their observations about plaintiff's limitations.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this     18th     day of February, 2009.

      /s/ Garr M. King  
    Garr M. King  
    United States District Judge